## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| **ARQUEVIOUS CRANE,** | * | |
| **an individual,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **TRI STAR ENERGY, LLC,** | * | **Case No.** |
| **a limited liability company,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, ARQUEVIOUS CRANE ("Class Representative Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorney, hereby files this as a Class Action lawsuit against TRI STAR ENERGY, LLC, ("Defendant") and alleges civil rights violations committed by Defendant TRI STAR ENERGY, LLC, a limited liability company (hereinafter "TRI STAR ENERGY, LLC" and/or "Defendant"), against people in wheelchairs who, without the obligations imposed by Title III of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"), would otherwise be denied equal access to the goods and services provided to able-bodied members of the public in the United States. Defendant denies individuals in wheelchairs equal access to the goods and

services provided to its able-bodied customers at its Tri Star Energy, LLC convenience store locations in violation of the ADA.

## **INTRODUCTION**

1.     Plaintiff brings this action individually and on behalf of all others similarly situated against Defendant, alleging violations of Title III of the ADA and its implementing regulations, in connection with access barriers at public accommodations owned, operated, controlled, leased to, and/or leased by Defendant ("Defendant's facilities" and/or "TRI STAR ENERGY, LLC convenience stores" and/or "TRI STAR ENERGY, LLC convenience store locations and/or properties" and/or "TRI STAR ENERGY, LLC facilities" and/or "subject facilities".)

2.     Plaintiff ARQUEVIOUS CRANE has mobility disabilities and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

3.     Plaintiff has patronized Defendant's facility within the last two years of the filing of this complaint and intends to continue to patronize Defendant's facilities. However, unless Defendant is required to remove the access barriers described below, Plaintiff will continue to be denied full access to Defendant's facilities as described and will be denied the ability to fully use Defendant's facilities.

4.    Plaintiff advocates for the rights of similarly situated disabled persons and has acted as a "tester" for purposes of asserting his civil rights as well as for purposes of monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.

5.    Therefore, on behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendant's facilities violate federal law as described and an injunction requiring Defendant to remove the identified access barriers so that Defendant's facilities are fully accessible to and independently usable by individuals with mobility disabilities, as required by the ADA. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, over a period of many years, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant is brought into compliance with the relevant requirements of the ADA and to ensure that Defendant revise its company-wide policies and procedures that are presently ineffective at curbing noncompliance with the ADA at their locations.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

6.    Congress enacted the ADA well over twenty-five years ago and, in so doing, clearly stated its intention to "provide a clear and comprehensive national

3

mandate for the elimination of discrimination against individuals with disabilities."
42 U.S.C. § 12101(b)(1).

7.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life. This lawsuit focuses on Defendant's systematic, willful failure to maintain its places of public accommodation in compliance with the ADA.

8.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

9.    A unanimous Supreme Court upheld the constitutionality of the public accommodations provisions of the Civil Rights Act of 1964 in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964). The Supreme Court agreed that Congress possessed the authority to outlaw discrimination in public

accommodations on the basis of race. *Id*. at 261-62. Congress acted again to outlaw discrimination in public accommodations—this time on the basis of disability. 42 U.S.C. § 12182(b)(1)(D).

10.    Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of [accommodations] by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Congress made no distinction whether the owner should be a natural person, a partnership, a corporation, or any other type of structure allowed under the law. Therefore, Congress outlawed discrimination on the basis of disability.

11.    The ADA expressly contemplates the loss of opportunity as an actionable injury. Congress included within the Act the stated goal of assuring "equality of opportunity" to disabled persons. 42 U.S.C. § 12101(a). The ADA provides a cause of action to "any person who is being subjected to discrimination" and expressly states that "it shall be discriminatory to subject an individual or class of individuals on the basis of disability … to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a) and (b)(1)(A)(i).

12.    A disabled plaintiff is denied the opportunity to participate in or benefit from the goods and services, which is among the ADA's general prohibitions, in

several ways, including a Defendant's "failure to remove architectural barriers," which is among the specific prohibitions listed in § 12182(b)(2)(A)(iv). Thus, the disabled Plaintiff suffers an ongoing injury so long as he is effectively denied the opportunity to participate in or benefit from the goods, services, facilities, advantages, or accommodations of the entity.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C.§133 and 42 U.S.C. § 12188.

14.     Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

15.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a part of the events and/or omissions at issue occurred.

## PARTIES

### Plaintiff

16.     Plaintiff ARQUEVIOUS CRANE is sui juris, a Georgia resident, who has been confined to a wheelchair for several years. Plaintiff is currently 30 years of age. He sustained a C-5-6 fracture in a football game when he was in high school

and has been paralyzed from the neck down since then. As such, he requires the use of a wheelchair.

17.     Plaintiff ARQUEVIOUS CRANE is an advocate of the rights of similarly situated disabled persons and are "testers" for asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA and provide safe and equal access to people in wheelchairs.

18.     Because of his disabilities, Class Representative Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq.

## **Defendant**

19.     Defendant Tri Star Energy, LLC, is a Delaware corporation with its corporate headquarters located at 1740 Ed Temple Blvd., Nashville, Tennessee 37208. Defendant conducts business in the State of Georgia and within this judicial district.

20.     Upon information and belief, Tri Star Energy, LLC owns, leases, operates, maintains, and/or manages brand convenience stores responsible for the design, construction, and/or alteration, as well as the policies, practices, and

procedures at these stores, including the discriminatory architectural barriers, policies, practices, and procedures alleged in this complaint.

## Defendant's Corporate Structure and Operations

21.    Defendant's convenience stores are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(F).

22.    Defendant owns, operates, controls, and/or leases places of public accommodation.

23.    Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs.

24.    Defendant is a Delaware limited liability company with its principal place of business at 1740 Ed Temple Blvd., Nashville, TN 37208.

25.    Defendant is in the business of owning and/or operating convenience stores in Tennessee, Georgia, Alabama, and Kentucky.

26.    Defendant's website states in part,

*"Our customers' lives are changing – and moving fast. At Tri-Star Energy LLC, we understand that the convenience industry has to change along with them. That's why our regional chain of exclusive Twice Daily stores is stocked with the fresh, quality menu items that today's busy families demand. Our competitive Shell gasoline prices, delicious artisan food choices, and quality products keep customers coming back again and again. When it comes to helpful service, our staff has the market cornered.* **Our friendly guest hosts or hostesses are ready to welcome and assist customers from the moment they enter the door.** *(emphasis supplied) They're*

8

*full of answers to questions about our clean, easy-to-navigate stores, plus they always know about our daily deals. We want every Twice Daily experience to be as convenient as possible. After all, our customers are our friends and neighbors, too. Every Twice Daily store is locally owned and operated, and both our management and our employees share a deep commitment to giving back to the community. It's all reflected in our vision statement:* **"We will be the Mid-South's premier convenience retailer, providing a differentiated food and fuel experience that excites our guests and our team members by delivering top-tier performance every day, on every site, while leading in community support and involvement."** *(emphasis supplied)*

27.    Defendant owns and/or operates some convenience stores under the trade name "Twice Daily."

28.    According to the Defendant's website, it owns or operates **"over 80"** "Twice Daily" convenience stores.

29.    Defendant also owns and/or operates some convenience stores under the trade name of "Sudden Service."

30.    According to Defendant's website, it owns and/or operates Sudden Service convenience stores at **"50+ locations."**

31.    Defendant also owns and/or operates coffee shops under the trade name of "White Bison Coffee."

32.    The White Bison Coffee Shops are incorporated into some of the Defendant's convenience stores, while others are operated as stand-alone stores.

33.    According to the White Bison Coffee website, Defendant owns and/or operates 14 coffee shops.

9

**Defendant's Promises Ring Hollow for the Mobility Impaired**

34.    There are approximately 34.2 million people in the United States who have mobility-related disabilities that require assistive devices such as wheelchairs, scooters, and/or walkers. A snapshot of the three states that comprise the Eleventh Circuit shows there are over 725,000 people in the State of Alabama who have mobility-related disabilities that require assistive devices such as wheelchairs, scooters, and/or walkers. There are over 2.5 million people in the State of Florida who have mobility-related disabilities that require assistive devices such as wheelchairs, scooters, and/or walkers. There are over 1.1 million people in the State of Georgia who have mobility-related disabilities that require assistive devices such as wheelchairs, scooters, and/or walkers.

35.    As previously noted, Defendant has over 140 stores in Tennessee, Georgia, Alabama, and Kentucky. Hence, daily some portion of the 34 million residents of the United States who are limited by mobility-related disabilities that require assistive devices such as wheelchairs, scooters, and walkers may encounter discrimination at Defendant's convenience stores.

36.    Defendant has systemically, and intentionally discriminated against individuals with mobility disabilities by implementing and maintaining consistently inadequate corporate policies and company-wide practices that result in routine violations of the ADA's accessibility guidelines and consistently produce access

10

barriers at Defendant's facilities nationwide. The resulting discrimination suffered by Plaintiff at the hands of Defendant is not unique to the individually named Plaintiff but is shared by all similarly situated disabled individuals and members of the putative Class.

37.    Defendant has willfully maintained violations of the ADA's accessibility guidelines despite its knowing obligation to cure same and in so doing have perpetuated the existence and occurrence of discriminatory barriers to safe and equal access affecting Plaintiff and all similarly situated disabled persons, including members of the Class. Defendant's continued practice of intentional non-compliance amounts to an unofficial policy of discrimination responsible for the barriers to equal access common to the Tri Star Energy, LLC convenience store locations encountered by Plaintiff as set forth herein. Defendant's company-wide de facto policy of discrimination has caused architectural barriers that prevent equal access by wheelchair bound individuals to its properties across the United States.

38.    In fact, numerous Twice Daily, Sudden Service, and White Bison Coffee properties owned, operated, leased, managed, and/or controlled by Defendant have common exterior and interior elements that are inaccessible to individuals who rely on wheelchairs for mobility. These inaccessible elements have persisted for years resulting in Defendant's continued company-wide practice of intentional noncompliance and de facto discrimination policy.

11

39.     Defendant's unification around the Twice Daily, Sudden Service and White Bison Coffee brands is the means through which centralized decision-making is applied brands consistently at its locations throughout the United States. This corporate-wide unification has resulted in the design, construction, alteration, operation, and/or maintenance of inaccessible elements to its facilities which constitute common barriers to equal access for individuals with mobility impairments that are consistent at Defendant's locations and allows it to persist and continue at Defendant's facilities throughout the country.

40.     Unless Defendant is required to remove the numerous access barriers described herein, and required to change its discriminatory policies and practices so that the access barriers do not reoccur at Defendant's Tri Star Energy, LLC, convenience store properties, Plaintiff and the proposed Class members will continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendant's facilities nationwide.

41.     Plaintiff visited Defendant's facility prior to filing this class action complaint but was denied full, safe, and equal access to, and full and equal enjoyment of, Defendant's facility as a result of Defendant's discriminatory barriers existing within and about Tri Star Energy, LLC's, convenience store/gas station property locations. The access barriers present at Defendant's facilities make it impossible for a wheelchair user to fully and independently experience Tri Star

Energy, LLC's facilities in a manner that equals the experience provided to Tri Star Energy, LLC's able-bodied customers.

42.     The facilities owned, operated and/or controlled by Defendant not only have interior violations which directly affect wheelchair users' accessibility, but they also have exterior violations which make it impossible for safe, independent, and equal entry to the store for people who rely on wheelchairs for mobility.

43.     Defendant is required to remove existing architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); in the alternative, if there has been an alteration to Defendant's places of public accommodation since January 26, 1992, the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facilities are readily achievable to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

44.     Because Defendant's stores are constructed, altered, repaired, operated, controlled, and/or uniformly maintained by Defendant with respect to the interior

and exterior elements in ways that violate the ADA, Plaintiff seeks to certify a class action pursuant to Fed. R. Civ. P. 23.

## EXPERIENCES OF NAMED PLAINTIFF

45.   Plaintiff  ARQUEVIOUS CRANE   visited a Tri Star Energy, LLC, brand convenience store property owned and/or operated by Defendant in Greensboro, Greene County, Georgia, within the last two years, where he experienced unnecessary difficulty and risk in both the exterior and interior areas of the facilities due to inaccessible parking, inaccessible and/or obstructed accessible routes of travel, accessible elements lacking the minimum requisite clear floor or ground space, inaccessible self-service beverage dispensers, inaccessible shelves, and dispensing devices for tableware, dishware, condiments, and food, in addition to other ADA accessibility violations as set forth in more detail below.  Specifically, Plaintiff ARQUEVIOUS CRANE has visited Defendant's store located at 2480 Meadow Crest Rd., Greensboro, Greene County, Georgia, within the last two years and encountered various barriers to entry as defined by the ADA at said location.

46.   As a result of Defendant's noncompliance with the ADA, Plaintiff ARQUEVIOUS CRANE's ability to access and use Defendant's facilities has been significantly impeded. He has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to prevent.

47.    Defendant has already been named in 15 causes of action under the ADA in the United States District Court for the Middle District of Tennessee. The cases allege violations at other stores in part as follows:

## OTHER LOCATIONS AND VIOLATIONS

### 7691 Hwy 70 S, Nashville, TN 37221

i.    The purported access aisle does not adjoin the ramp on the purported accessible route to the entrance of the business.

ii.    The entrance ramp lacks a level top landing area. Violation: The curb ramp has no level landing area.

iii.    The purported accessible parking spaces are not level in all directions and have areas of uneven, broken pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

iv.    The van accessible parking space is not located on the shortest accessible route from parking to the accessible entrance.

v.    There is no functionally accessible route.

vi.    The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

vii.    Protective pipe insulation is not provided on the exposed water pipes beneath the restroom sink.

### 4040 Hillsboro Pike, Nashville, TN 37215

i.    There is no van accessible parking.

ii.    There is no van accessible parking identified as such with upright "Van Accessible" signage.

iii.    There is no visible upright signage (displaying the International Symbol of Accessibility) designating any parking spaces as accessible.

15

iv.   There is no accessible route provided within the site from the public sidewalk which serves the facility.

v.   The van accessible parking space is not located on the shortest accessible route from parking to the accessible entrance.

vi.   The ramp handrail has no edge protection or sides to protect wheelchair users against having their wheelchair casters slip off the edge of the ramp surface.


### 4601 Alabama Ave, Nashville, TN 37209

i.   There is no van accessible parking identified as such with upright "Van Accessible" signage.

ii.   The purported accessible parking spaces are not level in all directions and have areas of uneven, broken, and cracked pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

iii.   The purported accessible aisles are not level in all directions and have areas of uneven, broken, and cracked pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

iv.   There is no accessible route to the storefront entrance on Subject Facility as it is obstructed with pallets of water cases blocking the accessible route from the purported space.

v.   Customers cannot safely utilize the parking facility because the designated accessible parking space is not level in all directions (creating small reflective pools of standing water within the spaces in rainy conditions) because of Defendant's practice of failing to inspect and maintain the parking surface.

vi.   The exterior bagged ice cooler positioned on the built-up storefront curb does not have enough level maneuvering clearance on the curb for a wheelchair user to gain access to the cooler's outward swinging doors.

vii.   Customers cannot access the soap dispenser independently as it was mounted too high to reach.

viii.   The accessible entrance entry door closer closes too quickly.

ix.   The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

x.   The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant, which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.

## 7201 Hwy 70 S, Nashville, TN 37221

i.   There is no van accessible parking identified as such with upright "Van Accessible" signage.

ii.   There is no accessible route provided within site from the public sidewalk which serves the facility.

iii.   The access aisle adjacent to the designated accessible space has a curb ramp projecting into it and/or has surfaces that are otherwise not level in all directions.

iv.   Customers cannot safely utilize the parking facility because none of the parking spaces within the parking facility outside subject facility is level but have a severe downward slope.

v.   Customers cannot safely utilize the parking facility because none of the access aisles within the parking facility are level but have a severe downward slope.

vi.   Customers cannot access the soap dispenser independently as it was mounted too high to reach.

vii.   The restrooms have door closers that cause the restroom doors to close too quickly.

## 1702 West End Ave, Nashville, TN 37203

i.   There is no van accessible parking identified as such with upright "Van Accessible" signage.

ii.     There is no visible upright signage (displaying the International Symbol of Accessibility) designating any parking spaces as accessible.

iii.    The paint delineating the accessible parking spaces and access aisles is not being maintained so that it clearly marks the accessible parking location.

iv.     There is no accessible route provided within the site from the public sidewalk which serves the facility.

v.      The purported van accessible parking spaces are not level and have areas of pitted and/or broken pavement because of Defendant's practice of failing to inspect and maintain the parking surface.

vi.     The purported access aisles are not level and have areas of pitted and/or broken pavement because of Defendant's practice of failing to inspect and maintain the parking surface.

vii.    The van accessible parking space is not located on the shortest accessible route from parking to the accessible entrance.

viii.   The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

ix.     The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant, which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.

x.      Protective pipe insulation is not provided on the exposed water pipes beneath the restroom sink.

xi.     Customers cannot access the soap dispenser independently as it was mounted too high to reach.

xii.    The mirrors provided for public use in the restrooms are mounted too high.


**2432 Highway 46 South, Dickson, TN 37055**

i.      There is no van accessible parking.

18

ii.  There is no visible upright signage (displaying the International Symbol of Accessibility) designating any parking spaces as accessible.

iii.  There is no van accessible parking identified as such with upright "Van Accessible" signage.

iv.  The purported accessible parking spaces are not level in all directions and have areas of uneven, broken, and cracked pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

v.  The purported accessible aisles are not level in all directions and have areas of uneven, broken, and cracked pavement.

vi.  There is no accessible route provided within site from the public sidewalk which serves the facility.

vii.  The exterior bagged ice cooler positioned on the built-up storefront curb does not have enough level maneuvering clearance on the curb for a wheelchair user to gain access to the cooler's outward swinging doors.

viii.  The customer cannot safely traverse the path of travel from the parking facility to the store entrance as the designated accessible route has excessive cross slopes and unpermitted changes in the level present.

ix.  The customer cannot traverse the aisles within the store with the same access as Defendants' able-bodied customers due to noncompliant clear widths within the 180 degree turn arounds at the end of aisles caused by merchandise positioned within the interior paths of travel.


## 2112 Charlotte Ave, Nashville, TN 37203

i.  There is no van accessible parking.

ii.  The customer cannot safely utilize the parking facility because the designated accessible parking space is not level in all directions.

iii.  The customer cannot safely utilize the parking facility because the access aisle serving the designated accessible parking space is not level in all directions.

iv.    The customer cannot safely utilize the parking facility because none of the purported accessible parking spaces within the parking facility are level and have a severe downward slope.

v.    The customer cannot safely utilize the parking facility because none of the purported accessible aisles within the parking facility are level and have a severe downward slope.

vi.    The purported accessible parking spaces are not level in all directions and have areas of uneven, broken, and cracked pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

vii.    The purported accessible aisles are not level in all directions and have areas of uneven, broken, and cracked pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

viii.    The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

ix.    The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant, which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.

x.    At least five percent of the indoor seating is not wheelchair accessible.

xi.    Protective pipe insulation is not provided on the exposed water pipes beneath the restroom sink.

xii.    The customer cannot safely transfer from her wheelchair to the toilet because the dispenser(s) is obstructing the grab bars.


## 312 Harding Pl, Nashville, TN 37211

i.    The shared access aisle serving the designated accessible parking spaces is not level.

ii.     The customer cannot safely traverse the path of travel from the parking facility to the store entrance as the designated accessible route has excessive cross slopes and unpermitted changes in level present.

iii.    There is no accessible route provided within site from the public sidewalk which serves the facility.

iv.     The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

v.      The customer cannot traverse the aisles within the store with the same access as Defendant's able-bodied customers due to noncompliant clear widths within the 180 degree turn arounds at the end of aisles caused by merchandise positioned within the interior paths of travel.

vi.     The restrooms have door closers that cause the restroom doors to close too quickly.

vii.    The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.

viii.   At least five percent of the indoor seating is not wheelchair accessible.


## 101 Long Hollow Pike, Gallatin, TN 37214

i.      The van accessible parking space is not located on the shortest accessible route from parking to the accessible entrance.

ii.     There is no accessible route provided within site from the public sidewalk which serves the facility.

iii.    The accessible route along the storefront curb to the outdoor seating of the Subject Facility was obstructed by vehicles parked in spaces abutting the accessible route because no parking stops are provided at said parking spaces. This allows parked vehicle overhangs to reduce the width of the path of travel to less than 36 inches wide for more than 24 linear inches.

21

iv.    At least five percent of the indoor seating is not wheelchair accessible.

v.    The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

## 580 Donelson Pike, Nashville, TN 37214

i.    There is missing visible upright signage (displaying the International Symbol of Accessibility) numbering from one to many, designating parking spaces as accessible.

ii.    There is no van accessible parking identified as such with upright "Van Accessible" signage.

iii.    There is no van accessible parking.

iv.    The customer would have difficulty traversing the path of travel from the parking facility to the public entrance due to obstructions created by vehicles parked in spaces abutting the accessible route with no parking stops provided at said parking spaces which allowed parked vehicle overhangs to reduce the width of the path of travel to less than 36 inches.

v.    The entrance ramp lacks a level top landing area.

vi.    There is no accessible route provided within site from the public sidewalk which serves the facility.

vii.    The door handle for the exterior bagged ice cooler is not at an accessible height for wheelchair users.

viii.    The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

ix.    The restrooms have door closers that cause the restroom doors to close too quickly.

x.    The customer cannot use the paper towel dispenser independently as it was mounted too high to reach.

xi.    The flush controls are located on the wrong side of the toilet(s).

### 5800 Old Hickory Blvd, Hermitage, TN 37076

i.      The paint delineating the accessible parking spaces and access aisles is not being maintained so that it clearly marks the accessible parking location.

ii.     The designated accessible parking spaces are not located on the shortest accessible route from parking to the accessible entrance.

iii.    There is no accessible route provided within site from the public sidewalk which serves the facility.

iv.     The customer cannot safely utilize the parking facility because the access aisle serving the designated accessible parking space is not level in all directions (creating small pools of standing water within the spaces in rainy conditions) because of Defendant's practice of failing to inspect and maintain the parking surface.

v.      The purported accessible parking spaces are not level in all directions and have areas of uneven, broken pavement because of Defendant's history and practice of failing to inspect and maintain the parking surface.

vi.     The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

vii.    The restrooms have door closers that cause the restroom doors to close too quickly.

viii.   The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant, which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.

### 601 Fesslers Ln, Nashville, TN 37210

i.      There is no visible upright signage (displaying the International Symbol of Accessibility) designating any parking spaces as accessible.

ii.     There is no van accessible parking identified as such with upright "Van Accessible" signage

iii.   There is no van accessible parking.

iv.   The shared access aisle serving the designated accessible parking spaces is not level.

v.   The customer cannot safely traverse the path of travel from the parking facility to the store entrance as the designated accessible route has excessive cross slopes and unpermitted changes in level.

vi.   The customer cannot safely utilize the parking facility because none of the parking spaces within the parking facility are level but have a severe downward slope.

vii.   The paved areas immediately outside the purported accessible entrance door have an unlevel approach that extends into the required minimum level maneuvering clearance necessary for a wheelchair user to approach and access the entrance's outward swinging entry door.

viii.   The purported accessible routes from the purported accessible parking to the curb ramps along the various paths of travel to the tenant space entrances have unpermitted changes in the level

ix.   The purported accessible aisle does not adjoin the ramp to the property.

x.   The curb ramp is not on the shortest accessible route to the property entrance.

xi.   The customer cannot access the soap dispenser independently as it was mounted too high to reach.

xii.   There are no grab bars present in the toilet facilities.


## 6955 Charlotte Pike, Nashville, TN 37209

i.   There is no van accessible parking.

ii.   The customer cannot safely utilize the parking facility because the access aisle serving the designated accessible parking space is not level in all directions (creating small pools of standing water within the spaces in rainy conditions) because of Defendant's practice of failing to inspect and maintain the parking surface.

24

iii.    There is no van accessible parking identified as such with upright "Van Accessible" signage.

iv.    The customer cannot safely utilize the parking facility because none of the parking spaces within the parking facility are level but have a severe downward slope.

v.    The exterior bagged ice cooler positioned on the built-up storefront curb does not have enough level maneuvering clearance on the curb for a wheelchair user to gain access to the cooler's outward swinging doors.

vi.    There is no access aisle serving accessible parking.

vii.    The sales counter is too high for wheelchair users.

viii.    The visible upright signage (displaying the International Symbol of Accessibility) designating parking spaces as accessible is mounted too low.

ix.    The sales counter is too high for wheelchair users.


## 7534 Charlotte Pike, Nashville, TN 37209

i.    There is no van-accessible parking.

ii.    The customer cannot safely utilize the parking facility without the fear and stress of being unable to re-enter his vehicle because of the likelihood of another customer parking directly beside the Plaintiff's vehicle because the parking facility has no spaces designated as accessible with visible upright signage.

iii.    The customer cannot safely utilize the parking facility because the access aisle serving the designated accessible parking space is not level in all directions (creating small pools of standing water within the spaces in rainy conditions) because of Defendants' practice of failing to inspect and maintain the parking surface.

iv.    There is no van accessible parking identified as such with upright "Van Accessible" signage.

v.   The customer cannot safely traverse the path of travel from the parking facility to the store entrance as the designated accessible route has excessive cross slopes and unpermitted changes in level.

vi.   The accessible route from the designated accessible parking to the accessible entrance entry door has cracked and/or pitted ground surfaces which are not stable or firm.

v.   The purported accessible aisle does not adjoin the ramp to the property.

vi.   The customer cannot access the soap dispenser independently as it is mounted too high to reach.

vii.   The accessible entrance entry door closer closes too quickly.

viii.   The pressure setting on the accessible restroom door closer has not been maintained properly by Defendant which has caused the pressure required to open/close the restroom door to increase with time and use such that the restroom door requires excessive force to open.


## 801 Briley Pkwy, Nashville, TN 37217

i.   There is no visible upright signage (displaying the International Symbol of Accessibility) designating any parking spaces as accessible.

ii.   There is no van accessible parking identified as such with upright "Van Accessible" signage.

iii.   The customer cannot safely traverse the path of travel from the parking facility to the store entrance as the designated accessible route has excessive cross slopes and unpermitted changes in level.

iv.   The exterior bagged ice cooler positioned on the built-up storefront curb does not have enough level maneuvering clearance on the curb for a wheelchair user to gain access to the cooler's outward swinging doors.

v.   The van accessible parking is too narrow.

vi.   The self-serve tableware, cups, straws, condiments, and/or drink dispensers are positioned too high for wheelchairs users to reach.

vii.   The accessible route from the purported accessible parking to the public entry doors has a slope more than 1:20.

viii.   The access aisle serving the designated van accessible parking space is obstructed by the accessible ramp run and with store waste and/or stacks of empty merchandise cartons because of Defendant's practice of failing to maintain the access aisle surface.

## <u>CLASS ACTION ALLEGATIONS</u>

48.   Defendant has discriminated against, and continues to discriminate against, customers with mobility disabilities as more fully set forth in this Complaint.

49.   Plaintiff and Class members have encountered some or all of the accessibility barriers described in this class action complaint at Defendant's convenience stores due to their use of a wheelchair.  Upon information and belief, class members have experienced the same barriers to full and equal access that the individual Plaintiff who uses wheelchairs has experienced, and such barriers exist at Defendant's convenience stores throughout the United States.

50.   Class members have been injured by Defendant's failure to comply with the ADA.

51.   Plaintiff, ARQUEVIOUS CRANE, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself individually and on behalf of the following Class of persons:

"Any persons with mobility disabilities who use wheelchairs or are otherwise disabled due to mobility-related issues, who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any Twice Daily, Sudden Service, and White Bison convenience store in the United States on the basis of disability because of the presence of inaccessible parking, inaccessible sales counter(s), obstructed paths of travel, accessible elements without the minimum requisite clear floor or ground space, inaccessible self-service beverage dispensers, inaccessible self-service beverage machines or food service counters, inaccessible self-service shelves or dispensing devices for tableware, dishware, condiments, or self-service food items, or the failure to provide an accessible route connecting accessible elements, among other barriers."

52.    Excluded from the Class is Defendant Tri Star Energy, LLC, any person, firm, trust, corporation, or other entity affiliated with Defendant, and members of the federal judiciary.

53.    Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impracticable.  There are approximately 34.2 million people in the United States who have mobility-related disabilities which require assistive devices such as wheelchairs, scooters, and/or walkers. An additional 19.9 million people have upper extremity impairments that make pinching, tight grasping, or twisting of the wrist extremely difficult, if not impossible. There are a combined 54.1 million people in this country who have mobility and/or upper extremity disabilities such as those common to the named class representative Plaintiff. As such, the Class identified is

believed to consist of thousands if not tens of thousands of members, and the joinder of all such class members in this lawsuit is impracticable. Courts frequently use census data and common sense to determine that numerosity has been satisfied. See *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (using U.S. Census data to infer that thousands of persons with mobility and/or vision disabilities visit Defendant's park each year).

54.    As noted in paragraph 47, Defendant has already been named in 15 causes of action under the ADA United States District Court for the Middle District of Tennessee and these cases are pending. A copy of one of these complaints is attached as "**Exhibit A**."  Defendant has filed Motions to Consolidate in eight (8) of these cases, claiming in relevant part for the cases it describes as "Group Cases,"

> "As the parties and the causes of action in the Group Cases are identical, discovery can be streamlined if the Group Cases are consolidated, as can dispositive motions. **Moreover, Plaintiff's claims and Tri Star Energy, LLC's defenses will be virtually identical in all of the Group Cases, and the parties will be present the same or similar testimony in all of the Group Cases, should these matters proceed to trial.** (emphasis supplied) Counsel for the parties have discussed this request for consolidation with the Court and all are in agreement that consolidation promotes judicial economy and will not prejudice the parties. As such, Tri Star respectfully requests that the Court consolidate the Group Cases for all purposes, including trial."

55.    Plaintiffs in those "Group Cases" did not oppose Defendant's Motion to Consolidate, and the Court entered orders consolidating eight (8) cases. A copy

of a Motion to Consolidate these cases is attached as "**Exhibit B**" and a copy of one of the orders to consolidate is attached as "**Exhibit C**."

56.    Pursuant to Fed. R. Civ. P. 23(a)(2), common questions of fact and law exist as to all members of the Class.  These common questions include but are not limited to whether: Defendant violated Title III of the ADA with regard to the accessible routes, paths of travel, self-service beverage dispensers, self-service beverage machines and foodservice counters, self-service shelves and/or dispensing devices for tableware, dishware, condiments, and/or self-service food items, the minimum requisite clear floor or ground space for accessible elements, and her failure to provide an accessible route connecting accessible elements. All of the foregoing questions are common to the Class.

57.    The claims of the Plaintiff and Proposed Class Representatives are typical of the claims of the Class. The individual Plaintiff, like all other members of the Class, each use a wheelchair for mobility and claim that Defendant has intentionally violated the ADA by designing and/or controlling the discriminatory specifications, installation, construction, renovation, maintenance, and/or repair of all required accessible elements, accessible routes, paths of travel, fixtures, furnishings, and other accessible elements inside and outside the Defendant's stores resulting in inaccessible paths of travel, inaccessible routes, self-service beverage machine counters, sales counters, self-service drink dispensers, self-service shelves

and dispensing devices for tableware, dishware, condiments, and food items, parking facilities, and floor and ground space for accessible elements.

58.    The Proposed Class Representative will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to absent Class members. Plaintiff has retained counsel with extensive experience in litigation brought under the ADA.

59.    The Proposed Class Representative and retained counsel are aware of their fiduciary responsibilities to the Class and are determined to diligently carry out those duties.

60.    This action may be maintained pursuant to Rule 23(b)(2), because Defendant's actions in designing and/or controlling the discriminatory specifications, installation, construction, renovation, maintenance, and/or repair of all required accessible elements, accessible routes, paths of travel, fixtures, furnishings, and other accessible elements inside and outside the store resulting in inaccessible paths of travel, accessible routes, self-service beverage machine counters, sales counters, self-service drink dispensers, self-service shelves and dispensing devices for tableware, dishware, condiments, and food items, parking facilities, and floor and ground space for accessible elements at Twice Daily, Sudden Service, and White Bison stores are actions that generally apply to the Class and

31

require injunctive and declaratory relief, and is therefore, appropriate for the Class as a whole.

## SUBSTANTIVE VIOLATIONS

61.     The allegations contained in the previous paragraphs are incorporated by reference.

62.     The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendant's facilities were maintained in a manner to ensure that they remained accessible to and usable by individuals who use wheelchairs.

63.     Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

64.     Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to alter its policies and procedures constitute unlawful discrimination based on a disability in violation of Title III of the ADA.

65.     Defendant's facilities are required to comply with the Department of

Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards

42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

66.     Defendant is required to provide individuals who use wheelchairs full

and equal enjoyment of its facilities—42 U.S.C. § 12182(a).

67.     Defendant has failed and continues to fail to provide individuals who

use wheelchairs with full and equal enjoyment of its facilities.

68.     Defendant has discriminated against Plaintiff and the Class in that it has

failed to make Defendant's facilities fully accessible to, and independently usable

by, individuals who use wheelchairs.  This is a violation of 42 U.S.C. § 12182(a), as

described above.

69.     Defendant's conduct is ongoing and continuous, and Plaintiff has been

harmed by Defendant's conduct.

70.     Unless Defendant is restrained from continuing its ongoing and

continuous course of conduct, Defendant will continue to violate the ADA and will

continue to inflict injury upon Plaintiff and the Class.

71.     Given that Defendant has not complied with the ADA's requirements

to make Defendant's facilities fully accessible to, and independently usable by

individuals who use wheelchairs, Plaintiff invokes his statutory rights to a declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.      A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2), and 28 CFR § 36.501(b); which directs Defendant to (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to and independently usable by, individuals who use wheelchairs; (ii) that Defendant changes its policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place;

34

c.     An Order certifying the Class proposed by Plaintiff, naming Plaintiff as the class representative and appointing his counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (see *Gniewkowski v. Lettuce Entertain You Enterprises, Inc*., Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); see also *Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11) (same);

f.     An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders; and,

g.     The provision of any other relief the Court deems just, equitable and appropriate.

Respectfully submitted,
By: */s/ Julie McCollister*
Julie McCollister, Esq.
Counsel for Plaintiff and putative class
Georgia State Bar No.: 450726

McCollister Law, LLC
P.O. Box 2525
Blairsville, GA 30514
(706)745-0057
jbmccollister@gmail.com